UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
GREENBELT DIVISION

Case No. _____

In the Matter of:

LOCAL 689, AMALGAMATED TRANSIT     }
     UNION,                                  }
                                              }
                     Plaintiff,           }
                                              }
                                              }
                 v.                   }        COMPLAINT AND PETITION TO
                                              }          COMPEL ARBITRATION
                                              }
WASHINGTON METROPOLITAN AREA     }
     TRANSIT AUTHORITY,           }
                                              }
                     Defendant.         }
_____}

<u>Introduction</u>

        This is an action to compel arbitration of a labor dispute arising under several agreements between the parties, all of which provide for final and binding arbitration.  The Washington Metropolitan Area Transit Authority ("WMATA") enabling act or "Compact," Section 66 ( c), also requires binding arbitration to resolve all "labor disputes," as defined by that Act. Md.Code Transportation, Section 10-204 (The Compact was adopted in identical form by Maryland, Virginia, the District of Columbia and the U.S. Congress.  Citations herein will be to the Maryland Code version of the Compact.)

<u>Jurisdiction</u>

   1.     WMATA Compact Section 81, authorizes original jurisdiction "of all actions brought by or against the Authority ." Md. Code Transp. Section 10-204   In addition, the U.S. Arbitration Act authorizes a "petition . . . for an order directing that such arbitration proceed" in any United States District Court.  9 U.S.C. Section 4.

<u>The Parties</u>

   2.     Defendant Washington Metropolitan Area Transit Authority is a political subdivision of Maryland, Virginia, the District of Columbia and the United States

of America, enabled by adoption of the WMATA Compact to own and operate mass transit systems throughout Washington, D.C. and adjoining jurisdictions. WMATA owns and operates both bus and subway systems known for commercial purposes as "Metrobus" and "Metrorail."  WMATA's headquarters is located at 600 5th Street, NW, Washington, D.C.  20001.

3.      Local 689, Amalgamated Transit Union, ("Local 689" or "the Union") is a labor organization which represents, among others, most WMATA employees engaged in operation and maintenance work on Metrorail and Metrobus, along with workers employed by several private companies which provide paratransit services to WMATA's Metroaccess operation.  Local 689 offices are located at 2701 Whitney Place, Forestville, Maryland, 20747.  Local 689 has represented continuously mass transit workers employed by WMATA and its predecessors for over 100 years.

The Parties' Relationships

4.      Under the auspices of Section 66( b) of the Compact, Md. Code Transp. Section 10-204, Local 689 and WMATA are parties to a collective bargaining agreement ( or "CBA") which sets the terms of employment, including wages, salaries, hours, working conditions and pension or retirement terms for approximately 8,000 active WMATA employees and 7,000 retirees.  (Excerpts of the CBA are Exhibit A)

5.      Under Section 66(a) of the Compact, Md. Code Transp. Section 10-204  WMATA has entered into protective arrangements with Local 689, which arrangements have been approved by the United States Secretary of Labor, so as to be applicable to "any transit facility owned or controlled by [WMATA] and to any contract or other arrangement for the operation of transit facilities."  (Excerpts of protective arrangements are Exhibit B)

6.      Under Section 66( c), Md. Code Transp. Section 10-204  any "labor dispute" between Local 689, ATU and WMATA where "collective bargaining does not result in agreement" must be submitted to arbitration for a "final and binding determination."  As specified by the statute, "The term 'labor dispute' shall be broadly construed" to cover "any controversy concerning"

> Wages, salaries, hours, working conditions, or benefits including health and welfare, sick leave, insurance or pension or retirement provisions but not limited thereto, and including any controversy concerning any differences or questions that may arise between the parties including but not limited to the making or maintaining or collective bargaining agreements, the terms to be included in such

agreements, and the interpretation or application of such collective bargaining agreements and any grievance that may arise and questions concerning representation.

7.    All arbitration provisions, both contractual and statutory, which are applicable to labor disputes between Local 689 and WMATA require tripartite arbitration.  The party invoking arbitration names its own partisan member of a three-person Board.  The responding party must within five days name its own member of the three-person Board.  The two so-named are obligated to select from a list of five names provided by the American Arbitration Association one person to serve as neutral chair of the Board, which will resolve the dispute by majority vote and issue a "final and binding" award.  (CBA Section 105, Exhibit A, Protective Arrangements, paragraphs 14 and 15 respectively, Exhibit B and WMATA Compact, Section 66 (c))

The Present Dispute

8.    On November 30, 2018, Local 689 President/Business Agent Jackie Jeter wrote to WMATA officials in protest against WMATA transferring bus operation and maintenance to workers who are not paid the contractual pay rate or given contractual benefits.  The transfers, said President Jeter, of current WMATA employees were to make room for non-union employees to take their work at the new Cinder Bed Road bus operation.  President Jeter asserted that the Cinder Bed Road Division was going to be operated in violation of the CBA, the Federal protective arrangements and WMATA's own statute.  (Exhibit C, pp.1-3)

9.    Under the collective bargaining agreement, the protective arrangements and the Compact, the Union may raise labor disputes in the form of "questions," which may be submitted to final and binding arbitration, if they remain unresolved after 30 days.  (CBA Section 104( c) (Exhibit A), Protective Arrangements Sections 15 and 16 respectively (Exhibit B) and Compact Section 66( c))

10.   On December 31, 2018, WMATA began operation at its new Cinder Bed Road Division in violation of the parties' collective bargaining agreement, protective arrangements and the terms of its own Compact, by arranging a management contract with Transdev, a private corporation.  WMATA refused to hire or transfer its own existing workers to the division and also refused and failed to assure that Cinder Bed Road Division workers receive the pay and benefits which WMATA negotiated with the Union for its bus operation.

11.   WMATA did not respond to the November 30 Union questions until January 7, 2019 when it asserted that "your November 30 letter was an impermissible attempt to circumvent the Wolf award by raising once again issues already

decided in that award."  (Exhibit C, p. 9) WMATA refused to arbitrate the dispute under the contract, the protective arrangements or the Compact.

12.    The Union invoked arbitration over the dispute, naming its arbitrator.  (Exhibit C, pp. 7,8 and 10)

13.    WMATA refused to name its arbitrator or participate in selection of a neutral arbitrator.

14.    The Union Arbitrator obtained a list of neutral arbitrators from the American Arbitration Association and, after waiting weeks and giving several reminders, selected from that list neutral arbitrator Homer LaRue, of Columbia, Maryland and requested that arbitration proceed before him.  (Exhibit C, pp. 18-21)

15.    WMATA again posited that the matter was pending before Arbitrator Wolf and refused to participate.  (Exhibit C, p. 22)

16.    Neutral Arbitrator LaRue responded that WMATA's objection concerned arbitrability, which should be resolved in court.  (Exhibit C, pp. 23-26)

<u>Grounds to Compel Arbitration</u>

**COUNT I - WMATA REFUSES TO ARBITRATE A LABOR DISPUTE ARISING UNDER THE PARTIES' COLLECTIVE BARGAINING AGREEMENT.**

17.    The Collective Bargaining Agreement includes Section 110, which states that WMATA "shall not contract out or subcontract any work normally performed by the employees within the bargaining unit defined in this agreement which would result in a lay-off, transfer or demotion of these employees."

18.    The Union contends that WMATA has broken this provision of the contract, among others, by transferring bus operation work to the new Cinder Bed Road bus division managed by a private contractor, and transferring employees who were performing that bus operation work to other divisions to make way for them.

19.    WMATA fails and refuses to arbitrate to resolve this dispute.  Binding arbitration of of all of the Union's claims is mandatory under the parties' contract Section 105 and the WMATA statute, Section 66 ( c).

20.    Under the Federal Arbitration Act, 9 U.S.C. Section 4 and the WMATA Compact, Section 66( c), arbitration must proceed.

## COUNT II - WMATA REFUSES TO ARBITRATE A LABOR DISPUTE ARISING UNDER FEDERAL LABOR PROTECTIVE ARRANGEMENTS.

21.     WMATA received federal project grants to purchase land and construct its new Cinder Bed Road Bus Division, amounting to approximately 80% of the cost.

22.     WMATA allocated for use at its new Cinder Bed Road Bus Division bus vehicles and related equipment which were purchased with the assistance of federal project grants.

23.     The Union contends that WMATA ignored the employee protective arrangements which were conditions of those grants by failing to offer the new positions to existing workers and by failing to preserve the collectively bargained terms and conditions of employment for those now working at the Cinder Bed Road Division, among other violations.

24.     WMATA fails and refuses to arbitrate to resolve this dispute.  Binding arbitration of the Union's claims is required by the protective arrangements, paragraphs 14 and 15 respectively, and the WMATA Compact Section 66( c).

25.     Under the Federal Arbitration Act, 9 U.S.C. Section 4 and the WMATA Compact, Section 66( c), arbitration must proceed.

## COUNT III - WMATA REFUSES TO ARBITRATE A LABOR DISPUTE ARISING UNDER THE TERMS OF ITS OWN ENABLING ACT, THE WMATA COMPACT.

26.     Section 66(a) of the WMATA Compact provides that "Whenever the Authority shall operate any transit facility or enter into any contractual or other arrangements for the operation of such transit facility the Authority shall extend to employees of affected mass transportation systems first opportunity for transfer and appointment as employees of the Authority in accordance with seniority, in any non-supervisor job in respect to such operations for which they can qualify after a reasonable training period.  Such employment shall not result in any worsening of the employee's former position in his former employment nor any loss of wages, hours, working conditions, seniority, fringe benefits and rights and privileges pertaining thereto."

27.     The Union contends that WMATA violated this requirement, both as stated in the law and in the protective arrangements, with regard to the Cinder Bed Road Division, where employees performing the work before the Division opened were denied any right to continue in their work and those newly hired for the Division were not paid in accordance with the applicable contract provisions.

28.    WMATA fails and refuses to arbitrate to resolve this dispute.  Binding arbitration of these and all "labor disputes" is required by the WMATA Compact Section 66 ( c ).

29.    Under the Federal Arbitration Act, 9 U.S.C. Section 4 and the WMATA Compact, Section 66( c), arbitration must proceed.

## COUNT IV - WMATA'S STATED REASON FOR REFUSING TO ARBITRATE IS FRIVOLOUS

30.    WMATA counsel asserted repeatedly that the Union President's question raises issues which have already been resolved, or are being resolved, by another Board of Arbitration .  (Exhibit C, pp. 9, 11, 12, 15 and 22)

31.    The assertion is incorrect in fact and has no bearing on arbitrability.

32.    No other reason or excuse has been advanced by WMATA in explanation of its refusal to arbitrate.

33.    WMATA has demonstrated repeated, unconscionable, abusive delay in both arbitrating and refusing to abide by lawful arbitration awards, causing unnecessary delay and cost for the Union and its members to litigate merely to conduct lawful, binding arbitration of disputes.

Remedies Requested

34.    Under any or all of the above Counts, this Court should:

A.    Direct the parties to immediate arbitration before a Board of Arbitration led by Neutral Chairman Homer LaRue;

B.    Order WMATA to reimburse the Union for its costs, including reasonable attorneys' fees, expended in bringing this action; and

C.    Provide any other relief deemed appropriate by the Court in order to assure prompt and fair arbitration of labor disputes by WMATA.

Respectfully submitted,
Plaintiff
**Local 689, Amalgamated Transit Union, AFL-CIO**
By its Counsel,


_____/s/_____
Paul Tyler Bar No. 15776
Douglas Taylor
Brian Connolly
GROMFINE, TAYLOR& TYLER P.C.
1420 King Street, Suite 500
Alexandria, VA 22314
703.683.7780
703.683.8616 (fax)
ptyler@lbgt.com


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Complaint filed ATU Local 689, with accompanying attachments, will be hand delivered to WMATA headquarters no later than the 11th day of March, 2019 located at:

WMATA
600 Fifth Street NW
Washington, DC 20001


_____/s/_____
Paul Tyler Bar No. 15776